12768

FINANCE CORPORATION OF AMERICA v. KRISTIANSEN

(150 S. E., 652)

*Mr. L. D. Jennings,* for appellant.

*Messrs. Epps & Levy,* for respondent.

November 29, 1929.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

There are two appeals in this cause. The first is from a directed verdict in favor of the plaintiff-respondent, granted by Hon. M. M. Mann, Circuit Judge, presiding in the Court of Common Pleas for Sumter County, and from the refusal to direct a verdict in favor of the defendant. The other is also by the defendant from an order of Judge Mann settling the case for appeal.

There were two cases, quite similar in many respects, between the parties. It seems, with proper consent, they were tried together. One, which is called the *"Cummings case,"* related to a transaction of the appellant with Miss Lourine Cummings. That case was submitted to the jury and resulted in a mistrial. Only indirectly is it involved here. The other case, called the *"Hunter case,"* is the one in which there are the appeals mentioned.

We take up first the appeal as to the directed verdict. To understand that, it is necessary to see what were the issues in the cause as made by the pleadings.

The allegations of the complaint, briefly stated, were to the following effect: That the appellant, who was in the automobile business, on May 2, 1926, procured from Mrs. V. E. Hunter her note in the sum of $361.88, the payment of which was secured by a "conditional sales agreement," covering a certain automobile, which papers the appellant, for value, without recourse, sold and assigned to the respondent; that the "conditional sales agreement" set out that Mrs. Hunter had purchased an automobile from the appellant at the cash sale price of $520, on which Mrs. Hunter had paid $212.52; that the note and agreement were executed by Mrs. Hunter to the appellant for the purpose of enabling the appellant to discount the same with the respondent; that the automobile was never actually delivered to Mrs. Hunter, and that the appellant had never parted with the title to the same, and that the appellant had admitted to the agent of the respondent that the transaction was irregular and she had paid respondent $43.53, and gave the respondent written authority to make draft upon her for $307.48, the balance due on the contract; that the appellant declined to pay the draft when it was presented; that the transactions between the appellant and Mrs. Hunter were irregular and fraudulent, and without intention on the part of either of them to consummate the sale set forth in the papers, and were for the purpose of inducing the respondent to discount the papers and deliver the net proceeds to the appellant; that the security placed with the respondent was void and of no value; that Mrs. Hunter's note was worthless, unless properly secured, as she could not be made to respond to a judgment; that the respondent, without consideration, paid to the appellant the net proceeds of the note; and that the respondent, who was unaware of the fraudulent nature of the transactions, was entitled to recover of the appellant the sum it had lost thereby, $307.48.

The answer of the appellant set up a general denial of the allegations of the complaint, and went somewhat into detail as to the matters between the parties. She alleged that the sale of the automobile to Mrs. Hunter was a *bona fide* transaction, and vigorously denied "any statement or insinuation in the complaint to the contrary." The appellant claimed that the automobile so sold Mrs. Hunter was left in appellant's place of business until the purchaser could find a garage in which to keep the car, and for the further purpose of having the appellant instruct her as to the operation of the automobile; that about the time of the sale to Mrs. Hunter, appellant also sold Miss Cummings a car on the installment plan, which car was left in the place of the appellant, and the respondent purchased the paper of Miss Cummings about the same time it purchased the Hunter papers; that soon after the sale of the two cars, the place of the appellant suffered from fire, that the automobile sold to Miss Cummings was totally destroyed, and that sold to Mrs. Hunter was slightly damaged; that the respondent had both the automobiles insured in an insurance company owned, or controlled, by respondent, and the respondent tried to protect the insurance company by not collecting the amounts of insurance, but wished to force appellant to pay the sums due on the papers discounted by the appellant with the respondent; that the appellant and the agent of the respondent agreed that the appellant would pay $43.52 on the paper of Miss Cummings, which amount was past due at the time of the fire, and that she would honor respondent's draft for $307.48, the balance due on the Hunter paper, provided the respondent would satisfy and return to the appellant the Cummings paper; that the respondent made draft for the proper amount, but the same was not accompanied by the Cummings paper, and, for that reason, the appellant declined payment; and it was alleged that the respondent instituted the suit "in order to perpetuate a fraud upon" the appellant, "and to save the insurance which the plaintiff

should collect from the insurance company, the stock of which is owned or controlled by the plaintiff."

The motion of the respondent for a directed verdict in its favor, which was granted, was made upon the ground that the answer contained an acknowledgment of the indebtedness of the sum of $307.48 by the appellant to the respondent, and the willingness of the appellant to pay that amount, and that the allegation as to the reason of the appellant for not so doing, to wit, the cancellation of the Cummings contract, in which the appellant had no interest whatever, was not a binding consideration, and that such consideration set up in the answer was not valid and was of no legal effect.

The appellant's motion for a directed verdict was based upon the contention that the cause of action of the respondent rested upon the fraud alleged to have been practiced by the appellant in the sale of the car to Mrs. Hunter, and that there was no evidence to sustain the charge, but to the contrary all the evidence showed there had been a valid sale.

The view of the respondent's counsel, as expressed in the motion for a directed verdict, which was adopted by the presiding Judge at that time as his view, was not the view in an earlier stage of the trial of the Judge or of respondent's counsel.

In the course of taking the evidence, the Judge, in ruling on the admissibility of certain testimony, which the appellant sought to bring out, expressed the view that the case "goes back to whether the car was sold and delivered or not sold and delivered, as alleged in the complaint; all the other questions are subsidiary, and don't affect the question at issue." In arguing as to the admissibility of testimony, counsel for the respondent said, "The only question is the question of fraud," and in reply thereto, Judge Mann said, "That is right."

In our opinion, the first view of the Judge was the correct one. It is to be especially noticed that the respondent did not sue upon the draft referred to in the

complaint, or upon the written authority alleged to have been given by the appellant for the drawing of that draft. The basis of the respondent's suit was that the appellant had sold and discounted to it a note, the payment of which was secured by a "conditional sales agreement," of Mrs. Hunter, covering an automobile purporting to have been sold by the appellant to Mrs. Hunter, and on which the purchaser had paid $212.52, leaving a balance due on the contract of $361.-88, when, as a matter of fact, there had been no *bona fide* sale, the appellant had not parted with the title to the automobile, and the purchaser had not made the stated cash payment. The transaction between the appellant and Mrs. Hunter was styled in the respondent's complaint as "fraudulent and irregular." The allegations as to the draft appeared in connection with admissions alleged to have been made by the appellant to the respondent's representative that the transaction with Mrs. Hunter had been irregular.

All the allegations of the complaint, pertaining to the alleged fraud of the appellant, were denied in her answer. While she admitted giving the written authority, directing the respondent to draw on her, she alleged that this *evidence* against her was due to certain promises made by the respondent's representative in connection with the Cummings paper. The respondent alleged the draft as *evidence* of the admission made by the appellant against her interest. Both in her answer and in her testimony, the appellant endeavored to explain away that apparent *admission* by saying that the paper had been made under circumstances other than those claimed by the respondent.

There was evidence from both appellant and her witness Mrs. Hunter that the appellant had sold Mrs. Hunter the automobile, and that Mrs. Hunter had executed the papers in good faith. It is true that some of the statements of both of these witnesses, and especially some of their testimony on cross examination, may have been used by the respondent's counsel in argument to the jury to weaken the testi-

mony of the witnesses in favor of the contentions of the appellant. But the fact remains that there. was *some testimony* to go to the jury on what we conceive to have been the real issue in the cause as made by the pleadings of the parties. Under the well-recognized rule, if there was any evidence to refute the material allegations of the respondent's complaint, the appellant was entitled to have the issues submitted to the jury for decision. Let it be understood that we express no opinion as to the value of any testimony offered in the case. We are here simply passing upon the question as to the correctness of the holding that the respondent was entitled to a directed verdict.

We cannot sustain the appellant's exception that the presiding Judge committed error when he refused to direct a verdict in her favor. The testimony was altogether sufficient to require the cause to be submitted to the jury from the viewpoint of the respondent.

We think there was error on the part of the Circuit Judge in not permitting the appellant's attorney to cross examine the witness C. D. Arthur as to who were the officers of the respondent company and the Seaboard Insurance Company, which last-mentioned company insured for the respondent the automobiles referred to in the litigation. The appellant alleged that the respondent was seeking to protect the insurance company and keep it from paying insurance on the automobiles, and in order to carry out this purpose, the respondent was endeavoring to collect the alleged debts of Mrs. Hunter and Miss Cummings from the appellant. Mr. Arthur admitted that the respondent company owned stock in the insurance company. Each of the parties was charging the other party with fraud. In a suit where fraud is alleged, much latitude is allowed in the introduction of testimony, and especially in the cross examination of witnesses. The fifth exception of the appellant, raising this question, must be sustained.

As to the order settling the case for appeal: We think the record, as ordered to be made up by the Circuit Judge, was

about as good as he, or any one else, could have done, when the lawyers refused to get together. We see no error in this regard.

The judgment of this Court is: (1) That the directed verdict in favor of the respondent be, and the same is hereby, reversed, and the case remanded to the lower Court for a new trial; and (2) that the appeal from the order settling the case be, and the same is hereby, dismissed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES STAB-LER and CARTER concur.

MR. JUSTICE COTHRAN (concurring in result): I concur in the result. I think that the evidence offered by the defendant to the effect that the authorization of a draft upon her, which was absolute upon its face, was conditional upon the cancellation of the Cummings paper, clearly violated the rule as to parol evidence; but no objection to it was interposed. I do not think that the evidence tendered as to the ownership of the stock in the insurance company was admissible; it was irrelevant to any issue involved in the case.